# Staunton

## Commonwealth of Virginia ex rel. C. F. Joyner, Jr., Commissioner of the Division of Motor Vehicles v. James T. Butler.

September 6, 1950.

Record No. 3709.

Present, Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General,* and *D. Gardiner Tyler, Jr., Assistant Attorney General,* for the Commonwealth.

*Irby Turnbull,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This case is before us for the second time. As indicated in our former opinion (*Butler* v. *Commonwealth,* 189 Va. 411, 53 S. E. (2d) 152), it originated with a proceeding before the Commissioner of the Division of Motor Vehicles, under sections 18 and 19 of the Virginia Motor Vehicle Safety Responsibility Act (Acts 1944, ch. 384, pp. 591, 592, as amended; Michie's Code, 1948 Supp., secs. 2154 (a18), 2154(a19); Code of 1950, secs. 46-420, 46-421, 46-422, 46-423), to revoke or suspend the appellee's motor vehicle operator's license and all registration certificates and plates issued in his name. From an order of the Commissioner suspending such privileges for a period of twelve months the appellee appealed to the circuit court below, which pursuant to the verdict of a jury entered a judgment confirming the action of the Commissioner.

Upon the first appeal we reversed that judgment and remanded the case to the circuit court for a new trial. On the new trial the circuit court entered a judgment vacating

and annulling the Commissioner's order of suspension, and from that action the Commissioner has appealed as of right to this court. (Michie's Code, 1948 Supp., sec. 2154(a21); Code of 1950, sec. 46-424.)

Section 18 of the Act (Michie's Code, 1948 Supp., sec. 2154(a18); Code of 1950, sec. 46-420) empowers the Commissioner, after notice and a "due hearing" to "suspend or revoke for not more than one year, * * * the operator's or chauffeur's license issued to any person under the provisions" of the Act, "whenever it is satisfactorily proved at the hearing * * * that the licensee under charges (1) has, by reckless or unlawful operation of a motor vehicle, caused or contributed to an accident resulting in death or injury to any other person or in serious property damage, or (2) is incompetent to drive a motor vehicle, or (3) is afflicted with mental or physical infirmities or disabilities rendering it unsafe for him to drive a motor vehicle upon the highways, or (4) is habitually a reckless or negligent driver of a motor vehicle, or (5) has committed a serious violation of the motor vehicle laws of this State, or (6) is an habitual drunkard, or (7) is addicted to the use of drugs."

Section 19 of the Act (Michie's Code, 1948 Supp., sec. 2154(a19); Code of 1950, sec. 46-423) provides: "Upon any reasonable ground appearing in the records of the Division, the Commissioner may, when he deems it necessary for the safety of the public on the highways of this State, and after notice and hearing as hereinbefore provided, suspend or revoke for a period not to exceed five years, and not reissue during the period of suspension or revocation, the operator's or chauffeur's license of any person who is a violator of the provisions of the Motor Vehicle Code, as amended, and he may suspend or revoke for a like period, and not reissue during the period of suspension or revocation, any or all of his registration certificates and registration plates for any motor vehicle."

It will be observed that section 18 empowers the Commissioner to "suspend or revoke for not more than one year"

"the operator's or chauffeur's license" issued under the provisions of the Act, upon satisfactory proof of certain factors relating to the licensee's competency to operate a motor vehicle.

Section 19 is more drastic. It empowers the Commissioner to "suspend or revoke for a period not to exceed five years" both the operator's license and "any or all of his registration certificates and registration plates for any motor vehicle," provided the Commissioner "upon any reasonable ground appearing in the records of the Division" "deems it necessary for the safety of the public on the highways of this State" so to do.

Since the original order of the Commissioner suspended both Butler's "operating and registration privileges," and based such action upon his "opinion that it is necessary for the safety of the public on the highways of the State," it is apparent that he was of opinion that the evidence was sufficient to meet the requirements of section 19 of the Act.

On the first appeal we upheld the constitutionality of section 19. We also held that in reviewing the action of the Commissioner the circuit court should have heard and determined the matter without a jury.

The evidence on behalf of the Commissioner which was before the circuit court on the first trial consisted mainly of abstracts of judgments showing that over a period of five years Butler had been convicted in various jurisdictions of a number of violations of the motor vehicle laws of this State. Most of these convictions were for "speeding," but two were for "reckless driving." Except for two local trials held in courts in Mecklenburg county, the Commissioner produced no evidence other than admissions of Butler with respect to the circumstances of these convictions.

In our former opinion we held that these abstracts of convictions, standing alone, were insufficient to sustain the suspension of Butler's operator's license and registration certificates under section 19 of the Act, because such proof fell short of the fundamental requirement in the sec-

tion that such suspension be "necessary for the safety of the public on the highways of this State." (189 Va., at page 421, 53 S. E. (2d), at page 156.)

Consequently, we remanded the case with the direction that the circuit court hear such "additional evidence" as might relate to the necessity of such suspension or revocation of Butler's operator's license and registration privileges "for the safety of the public on the highways." (189 Va., at page 423, 53 S. E. (2d), at page 157.)

In determining the sufficiency of the evidence with respect to the necessity of such suspension we said: "We think the proper interpretation of the statutory provision authorizing this action is that it was intended solely for use in cases where the evidence indicates that, in the absence of such revocation, the motorist whose operator's license is being suspended will nevertheless continue to operate his motor vehicle or vehicles without such license in violation of the law. We conclude, therefore, that, should the circuit court find that there is no evidence from which a reasonable inference can be drawn that the appellant will continue to operate or drive his motor vehicles during the period of suspension of his operator's license (if same is suspended), then the statute cannot be said to justify the action of the Commissioner in also suspending and revoking the license plates and registration certificates." (189 Va., at page 425, 53 S. E. (2d), at page 158.)

We did not determine on the first appeal whether the evidence was sufficient to warrant a suspension or revocation of Butler's operator's license under section 18, for the obvious reason that should the additional evidence adduced at the second trial in the circuit court have supported the action of the Commissioner in suspending both the operator's license and registration privileges under section 19, it would not have been necessary to pass upon the first question.

But we pointed out (189 Va., at page 424, 53 S. E. (2d), at pages 157, 158) that there were three questions to be reviewed by the circuit court: (1) Whether the evidence

is sufficient to sustain the conclusion of the Commissioner that the appellee's operator's license should be suspended; (2) If sufficient, whether the suspension should be for twelve months or for a shorter period; (3) Whether it is "necessary for the safety of the public on the highways of this State" also to revoke and suspend the registration certificates and plates issued to the appellee.

The first two points fall within the purview of section 18, while the third is within the purview of section 19.

The evidence adduced at the second trial in the circuit court embraced that which was before us on the first appeal, including the abstracts of judgments of conviction during the period from August 15, 1942, to December 29, 1947, of twelve charges of speeding, two charges of reckless driving, and one charge of the improper use of a spotlight.

The additional evidence offered by the Commissioner consisted mainly of the testimony of various traffic officers with respect to the six convictions next preceding the institution of the suspension action before the Commissioner. These cover the period from September 25, 1944, through April 28, 1948. The Attorney General relies upon the following as being the most serious recent offenses:

(1) March 26, 1946, the conviction in the trial justice court of Brunswick county of speeding at the rate of 65 miles per hour through a stop sign at the intersection of Highway Routes 1 and 46.

(2) April 7, 1947, the conviction by the trial justice of Prince William county of speeding at the rate of 75 miles per hour twenty miles south of the city of Alexandria, on Highway Route 1, during heavy traffic.

(3) Nov. 13, 1947, the conviction by the trial justice of Caroline county of speeding at from 60 to 65 miles per hour around a curve on Highway Route 1, at approximately 1:30 a. m., and focusing a spotlight in the face of the driver of an approaching vehicle.

(4) April 28, 1948, the conviction in the recorder's court of Wake county, North Carolina, of speeding at from 75 to 80 miles per hour near Raleigh on Sunday afternoon during heavy traffic.

While there was evidence on behalf of the Commissioner that a large proportion of the accidents on the highways are due to excessive speed, fortunately none resulted from the traffic violations to which we have just referred. ·

There was evidence that as the result of Butler's reckless driving in the city of Fredericksburg in February, 1946, another motor vehicle was damaged to the extent of $163.25, and that this amount was paid by his insurance carrier.

However serious and flagrant these violations may be, there is nothing in them, or in the evidence relating thereto, which meets the test which we said in our former opinion should be applied in determining whether there be a necessity for suspending the appellee's registration privileges as well as his operator's license under section 19. Such evidence will not support "a reasonable inference" that the appellee "will continue to operate or drive his motor vehicles during the period of suspension of his operator's license (if same is suspended)." Indeed, the Attorney General makes no contention that this phase of the evidence meets this test.

The only evidence relied on by the Attorney General as tending to prove that the appellee may continue to drive his car during the period of suspension, if any, is that which shows that the appellee's operator's license expired on July 13, 1945, and was not renewed until March 14, 1946, and that during this interim he continued to drive. Furthermore, the Attorney General points out, the evidence shows that in applying for a renewal of his license the appellee falsely stated that he had never been previously convicted of reckless driving, when as a matter of fact he had been convicted of that offense a short time previously in the police court of the city of Fredericksburg.

The appellee was questioned before the circuit court with

respect to both of these matters. He testified that he had lost his operator's license and was unaware that it had expired. While he admitted the incorrectness of the statement in the application that he had not been convicted of reckless driving, he explained that this was due to the fact that he was convicted in his absence of this offense in the Fredericksburg police court and was unaware that this particular charge had been made against him.

There is nothing incredible in either of these statements which requires that they be disregarded. Certainly, the trial court was not bound to have drawn therefrom the inference that the appellee would continue to operate his car after his license had been suspended. On the contrary, the statement in the application, if deliberately false, might justify the inference that he realized the necessity of his having an operator's license and the danger of his driving without one.

█ We find no error, then, in the action of the circuit court in holding upon the second trial that the evidence did not justify the action of the Commissioner in suspending or revoking the appellee's "registration certificates and registration plates" under section 19.

Under the principles laid down in the former opinion our next inquiries are, whether the evidence is sufficient to warrant a suspension of the appellee's operator's license under section 18 of the Act, and if so, for what period. The circuit court did not pass upon these matters.

As has been previously pointed out, section 18 empowers the Commissioner to "suspend or revoke for not more than one year, * * * the operator's * * * license issued to any person * * * whenever it is satisfactorily proved at the hearing conducted by the Commissioner * * *, that the licensee under charges * * * (4) is habitually a reckless or negligent driver of a motor vehicle, or (5) has committed a serious violation of the motor vehicle laws of this State, * * *."

█ While the evidence of the numerous violations of

the traffic laws of this State by the appellee may fall short of showing that he is "habitually a reckless" driver, it clearly proves, in our opinion, that in more than one instance he "has committed a serious violation of the motor vehicle laws of this State."

It requires no extended reasoning to demonstrate that it is a "serious violation" of the law for the operator of a motor vehicle, where the permitted speed is 50 miles per hour, to operate his car at the rate of 65 miles per hour through a stop sign at the intersection of two main highways, or to drive at the rate of 75 miles per hour on a main highway during heavy traffic, or, while driving at a speed of from 60 to 65 miles per hour around a curve on a main highway during the nighttime, to focus a spotlight in the face of the driver of an approaching vehicle. The fact that no tragedy resulted from any of these incidents does not lessen the gravity of the offenses.

Although the appellee was questioned with respect to these incidents we find in his testimony nothing by way of extenuation of these flagrant violations of the law. In short, his proffered excuse for speeding in each case was that he was in a hurry. This, of course, is no excuse.

We are of opinion that these violations of the motor vehicle laws of this State fully warrant the suspension of the appellee's operator's license under section 18 of the Act. We are further of opinion that in order to impress upon him the duty and necessity of obeying the traffic laws of this State, which the General Assembly has enacted for the safety of the public and himself as well, his operator's license should be suspended for a period of one year.

In so far as the order of the circuit court annuls the action of the Commissioner in suspending the appellee's registration privileges, it is affirmed. In so far as the order annuls the action of the Commissioner in suspending the appellee's operator's license, it is reversed. A final order will be entered here suspending such operator's license for a period of one year from the date thereof.

The appellant having substantially prevailed on this appeal will recover her costs. *Richmond* v. *Henrico*, 185 Va. 859, 871, 41 S. E. (2d) 35, 42.

*Affirmed in part; reversed in part, and final judgment.*